Richard M. Garbarini (RG 5496)
GARBARINI FITZGERALD P.C.
250 Park Ave, 7th Floor
New York, New York 10177
Phone: (212) 300-5358
Fax: (888) 265-7054

*Attorney for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

| | |
|---|---|
| CHARMING BEATS LLC, | Case No.: 21-cv-7189 |
| Plaintiff, | **ECF CASE** |
| v. | **COMPLAINT AND JURY DEMAND FOR DAMAGES FOR COPYRIGHT INFRINGEMENT** |
| HYPEBEAST, INC. and 101 MEDIA LAB LTD., | |
| Defendants. | |

-----------------------------------------------------------------x

Plaintiff YESH MUSIC, LLC, by and through the undersigned counsel, brings this Complaint and Jury Demand against defendants HYPEBEAST, INC. and 101 MEDIA LAB LTD. for damages based on copyright infringement and related claims pursuant to the Copyright Act and Copyright Revisions Act, 17 U.S.C. §§ 101, et seq. ("the Copyright Act" or "Act") and violations of the Digital Millennium Copyright Act, 17 U.S.C. §§ 1201-05 (the "DMCA"). Plaintiff alleges below, upon personal knowledge as to itself, and upon information and belief as to other matters so indicated.

## JURISDICTION AND VENUE

1. This court has Infringing  matter jurisdiction pursuant to 28 U.S.C. §§ 1331 (federal question jurisdiction) and 1338(a) and (b) (jurisdiction over copyright actions).

## JURISDICTION

2.      Defendant HYPEBEAST, INC. is a corporation formed under the laws of Delaware, and is the subsidiary, of defendant HYPEBEAST, LTD a Hong Kong Corporation ("HYPEBEAST").

3.      Plaintiff is informed and believes and thereon alleges that defendant HYPEBEAST maintains its principal headquarters in this Judicial District located at 127 WEST 26th St., 2nd Fl., New York, NY 10001.

4.      Plaintiff is informed and believes and thereon alleges that defendant 101 MEDIA LAB, LTD. ("101 MEDIA") is a Hong Kong corporation doing business in the United States.

5.      Plaintiff is informed and believes and thereon alleges that defendants HYPBEAST and 101 MEDIA are alter-egos or affiliated companies that jointly own and operate a website located at <www.hypebeast.com>.

6.      Defendant 101 MEDIA infringed, directly and indirectly, plaintiff's Copyrighted Track from its headquarters in Hong Kong; this is a tort committed outside the state.

7.      Defendant 101 MEDIA was put on notice by plaintiff, multiple times, that its copying, distribution, public display, and synchronization of plaintiff's Copyrighted Track and composition "Anything You Synthesize" (the "Copyrighted Track") was unlicensed, and the plaintiff was domiciled in this state.  Defendant 101 MEDIA elected to continue to infringe after each notice.

8.      Defendant 101 MEDIA should have expected, or should reasonably have expected, its acts to have consequences in this state.

9.      The Copyrighted Track at issue here was used by defendants to promote their services, and jointly owned brand.

10.     Defendants generate substantially all of their revenue from international commerce.  Defendant HYPEBEAST acts as the office in New York City for defendant 101 MEDIA which focuses much of its on-line presence on New York.

11.     Defendant 101 MEDIA regularly does or solicits business, or engage in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state.

12.     Specific jurisdiction is conferred over defendant 101 MEDIA LAB LTD. pursuant to CPLR §§ 302(3)(i) and (ii).

## VENUE

13.     Defendant HYPEBEAST is domiciled in this Judicial District, and venue here is proper.

14.     At bar, a substantial part of the events or omissions giving rise to the claim occurred in this Judicial District.  Venue is proper for each defendant pursuant to 28 U.S.C. § 1391(b)(1)-(3).

## DUE PROCESS

15.     There are no due process concerns in light of the fact that defendants committed an intentional tort that they knew had an effect in this Judicial District.

16.     Defendants have an office in this Judicial District and frequently contract with companies in this Judicial District such that they reasonably know they may be haled into this forum.

## PARTIES

17.     Plaintiff CHARMING BEATS LLC is a New York limited liability company with a headquarters located at 75-10 197th St, 2nd Floor, Flushing, NY 11366.

18.     At bar, Plaintiff is informed and believes, and on that basis avers, that defendant HYPEBEAST, INC. ("HYPEBEAST") is a Delaware corporation, with its principal place of business located at 527 62nd Street, Brooklyn, New York, 11220.  Defendant HYPEBEAST has a designated agent for service of process GKL CORPORATE/SEARCH, INC., One Capitol Mall STE 660, Sacramento, CA 95814.

19.     Plaintiff is informed and believes, and on that basis avers, that defendant 101 MEDIA LAB, LTD. ("101 MEDIA") is a Hong Kong corporation doing business in the United States.

20.     Plaintiff is informed and believes and thereon alleges that at all times relevant hereto each of the Defendants was the agent, affiliate, officer, director, manager, principal, alter-ego, and/or employee of the remaining Defendants and was at all times acting within the scope of such agency, affiliation, alter-ego relationship and/or employment; and actively participated in or subsequently ratified and adopted, or both, each and all of the acts or conduct alleged, with full knowledge of all the facts and circumstances, including, but not limited to, full knowledge of each and every violation of Plaintiff's rights and the damages proximately caused thereby.

## FACTS

21.     Plaintiff is the sole owner by assignment of all rights to the original musical works titled *Anything You Synthesize,* U.S. Copyright Registration No. 713-287. See **Exhibit 1.**

22.     The Copyrighted Track was registered with the United States Copyright Office, with all formalities satisfied, before the infringement at issue or within three months of publication.

23.     Plaintiff is informed and believes, and thereon avers, that defendants accessed the Copyrighted Track and then reproduced it without the authorization of Plaintiff.

24.     Defendants, and each of them, unlawfully synchronized the unlicensed copy of the Copyrighted Track to a video advertisement titled *How Doing Laundry Gave Amir H. Fallah a Different Perspective on Painting* (the "Infringing Advertisement").

25.     Below is a screenshot of Infringing Advertisement.



26.     The Infringing Advertisement promotes the overall HYPEBEAST brand.

27.     Defendants created the Infringing Advertisement to specifically promote its "Pen and Paper" sub-brand.  Pen and Paper is a tab on defendants' Website that defendants describe as "The leading online destination for men's contemporary fashion and streetwear."

28.     Defendants embedded the code linking to the Infringing Advertisement to multiple Internet pages of the Pen and Paper tab on defendants' website.

29.     Defendants, without license or authority, distributed the Infringing Advertisement with the unlicensed synchronized reproduction of the Copyrighted Track, to many third-party content providers including YouTube.

30.     The Infringing Advertisement was, and is, publicly displayed on defendants' YouTube page located at <https://www.youtube.com/watch?v=Lb2FElrsBFg>.

31.     The Infringing Advertisement has been viewed well over one hundred thousand times on YouTube.

32.     Defendants directly uploaded the Infringing Advertisement to <www.dailymotion.com>.  Defendants have their own page on the Daily Motion website which they have uploaded 754 of their marketing videos.

33.     As of the date of this Complaint, the Infringing Advertisement is active and available to the public at <www.dailymotion.com/video/x6qtarq>.

34.     Defendants' Daily Motion page allows potential clients to subscribe to its Hypebeast TV marketing division.  It states on their Daily Motion page:

> **Get the latest from HYPEBEAST TV by hitting the SUBSCRIBE button!**

35.     Defendants use this cross-platform promotion as a key marketing tool to increase brand awareness.

36.     Defendants also distributed the Infringing Advertisement to third-party Internet content providers like Art Boss Magazine and MAFF, located at <www.findglocal.com/US/Greensboro/692763054156731/ArtBoss-Daily>; and <www.maff.tv>.

37.     MAFF and Art Boss publicly displayed the Infringing advertisement on their respective websites and also reprinted the defendants' marketing statement which is clearly designed to increase brand recognition and good-will.  Reprinted, in part, below.

> What separates Amir from his counterparts is his unique approach to art, which HYPEBEAST highlight in their latest episode of Pen & Paper.
>
> Known for his abstract renderings that are open to interpretation, over the course of three months, Amir took HYPEBEAST through the process of the inception, followed by the gradual development of his most recent work, "Eternal Companion."

38.     The third-party infringers also include hyperlinks to defendants' Website.

39.     Third-party infringers like art and music websites are vital avenues for defendants to spread the good-will and name recognition of their brand.

40.     Defendants knew at the time they copied, distributed, publicly displayed, and synchronized plaintiff's Copyrighted Track that they had no license to do so.  In fact, there are no facts from which the defendants could have reasonably formed a good-faith belief that they had the right to commercially exploit the Copyrighted Track.

41.     Defendants, jointly and severably, infringed plaintiff's exclusive rights set forth in Section 106 of the Act.  Defendants' lack of any basis for a good-faith belief they could commercially exploit the Copyrighted Track entitles the plaintiff, at its discretion, to elect one enhanced statutory damage award pursuant to 17 U.S.C. 504(c)(2)

**NOTICE AND DEFENDANTS' ATTEMPTED FRAUD**

42.     On May 14, 2020 plaintiff discovered the infringement after significant due diligence.  Defendants' infringement did not appear in scores of previous searches for unlicensed content on YouTube.

43.     Plaintiff immediately notified defendants that there was no license for their use of the Copyrighted Track. See **Exhibit 2**.  Defendants, again, elected to take no action.

44.     On May 17, 2020, Petar Kujundzic, defendants' Editorial Director, contacted plaintiff and requested additional information and a link to the infringement. See **Exhibit 2**.

45.     After supplying the exact link, plaintiff was contacted by Janet Lau, Legal Counsel, who stated:

> Hi Yesh,
>
> Your email has been forwarded to me. It's nearly 6 years already hence we are not able to confirm in the affirmative whether a license was obtained from you directly back then.
>
> In looking at our video, I noted that the music was indicated as material licensed to YouTube, where according to its terms, users are permitted to use the material in user generated videos. We hope this answers your

enquiry. If you have any other questions, please do not hesitate to let us know.

Kind regards,

See **Exhibit 2**.

46.     Defendants continued to infringe plaintiff's rights despite the multiple notices.

47.     On May 22, 2019, counsel for plaintiff responded to Ms. Lau, informing her that the plaintiff only recently discovered defendants' infringement, and that discovery was made nearly impossible in light of the defendants' removal of the copyright management information (CMI). See **Exhibit 3**.

48.     Plaintiff's counsel also explained to defendants' counsel that the YouTube Terms and Conditions, which incorporates the Copyright Policy and FAQs, expressly states in six different places that if the content being uploaded contains third-party music, YouTube cannot offer a license to any third-party content, and it is solely the uploaders responsibility to obtain all licenses.  The TACs even state that the uploader could be the subject of legal action by the third-party content owner.

49.     Defendants must make an affirmative acknowledgement that each has read the TACs and agrees to be bound by its contents.

50.     As for one example, the YouTube FAQs, which are incorporated into the TACs by reference, expressly states:

> YouTube can't grant you these rights and we can't help you find the parties who can grant them to you. You'll have to research and handle this process on your own or with a lawyer's help.

51.     As for a second example, the YouTube Copyright Policy states:

> YouTube cannot grant you the rights to use content that has already been uploaded to the site. If you wish to use someone else's YouTube video, you may want to reach out to them directly.

See **Exhibit 3**.

52.     Defendants' in-house counsel acknowledged the fact that defendants synchronized the Copyrighted Track and could not locate a license. See **Exhibit 2.**

53.     Defendants' next response took a shocking, and disturbing turn.  On or about May 27, 2020, Angela DiStefano, Esq., counsel to defendants sent an email to plaintiff's counsel stating that the musical track synchronized to the Infringing Advertisement was not the Copyrighted Track, and the YouTube Content ID System had made a mistake. See **Exhibit 4**.

54.     Ms. DiStefano also provided links to the purported musical tracks that were synchronized to the Infringing Advertisement. See **Exhibit 4**.

55.     Defendant's counsel was correct in the very narrow sense, that defendants changed the musical recordings and compositions synchronized to the Infringing Advertisement and removed the Copyrighted Track.

56.     Defendant's counsel, however, was claiming the newly revised Infringing Advertisement was the version originally uploaded to YouTube by defendants, and at no time did the defendants infringe the Copyrighted Track.

57.     Defendants fraudulent attempt with the assistance of counsel, to avoid the consequences of its acts of infringement, will inform the calculation of statutory damages at the conclusion of this matter.

58.     Defendants were clearly not aware of the fact that plaintiff extracted a copy of the Infringing Advertisement from YouTube when it discovered defendants' infringement.  Plaintiff

takes this precaution to prevent, as we have here, unscrupulous parties from attempting the very subterfuge as defendants attempted here.

59.     Defendants swapped out the Copyrighted Track and claimed it was never there in or around May 27, 2020.  This audacious fraudulent scheme of defendants and their counsel, however, was attempted with a complete lack of awareness that defendants' in-house counsel had already admitted defendants synchronized plaintiff's Copyrighted Track to the Infringing Advertisement.

60.     It is without question that the Copyrighted Track is identical (to the note) to the unlicensed reproduction of the track synchronized to the Infringing Advertisement.

61.     Once they were exposed, defendants restored the Copyright Track and made the Infringing Advertisement private on defendants' YouTube page.  This is still an on-going infringement of plaintiff's rights.

62.     Defendants elected to reproduce, synchronize, distribute, and/or publicly display plaintiff's Copyrighted Track, despite the fact that it had no license or plausible authority to do so.  Defendants also materially contributed to the infringements of each third-party that publicly displayed the Infringing advertisement without a license.

63.     As a direct and proximate result of defendants' infringement of plaintiff's exclusive rights to the Copyrighted Track as set forth in Section 106 of the Act, plaintiff has incurred damages, and requests an award of plaintiff's actual damages, and defendants' profits in excess of plaintiff's actual damages, plus the reasonable attorneys' fees and costs incurred in this action.  Plaintiff may also elect to recover one statutory damage award.  Defendants' acts of infringement were intentional or with reckless disregard to plaintiff's rights, and plaintiff is

entitled to an enhanced statutory damage award of up to $150,000 pursuant to 17 U.S.C. § 504(c)(2).

## DAMAGES

**Actual Damage Calculation**

64.     Plaintiff is entitled to its standard licensing fee for the Copyrighted Track of $5,000 per year (Internet only) for the three years prior to this Complaint for a total of $15,000.

65.     Plaintiff's actual damages also include defendants' direct, and indirect, profit from its exploitation of the Copyrighted Image, in excess of plaintiff's actual damages, plus the reasonable attorneys' fees and costs incurred in this matter.

**Statutory Damage Calculation**

66.     In the event plaintiff elects one enhanced statutory damage award, an award at the higher part of the range is demanded by the facts and circumstances in this matter.

67.     Plaintiff's lost license revenue of $15,000 should be multiplied by three ($45,000) as part of the statutory damage award calculation.

68.     Defendants' state of mind supports a much higher statutory damage award.  There is a complete absence of any facts to support the position that defendants had a good faith belief to copy, distribute, and publicly display the Copyrighted Image.  Defendants' failure to cease the unlicensed public display of the Copyrighted Image after two demands directly informs the analysis concerning defendants' state of mind.

69.     Defendants are a well-aware of its obligation to obtain a license prior to commercially exploiting third-party content.  Defendants form a major sophisticated Internet based company, and they have appeared numerous times before this Court both defending and prosecution copyright infringement actions.

70.     The forgoing supports the fact that defendants' state of mind was willful at all times relevant to this Complaint.

71.     After defendants' unlawful activity was discovered, defendants, through counsel, attempted to avoid liability through subterfuge.

72.     An additional substantial amount, subject to proof, should be included in the statutory damage award calculation as a deterrent effect necessary to discourage defendants from engaging in the acts described herein in the future.

73.     Defendants clearly has no desire to cooperate in any manner with plaintiff's requests to participate in a resolution.

74.     The forgoing demonstrates defendant's attitude and lack of willingness to participate in a resolution.

75.     The enhanced statutory damage award, in light of the forgoing, should be at least $125,000, plus reasonable attorneys' fees and costs incurred in this matter.

## FIRST CLAIM FOR RELIEF
## COPYRIGHT INFRINGEMENT

76.     Plaintiff incorporates the allegations contained in the preceding paragraphs as if set forth here at length here.

77.     It cannot be disputed that the plaintiff has a valid, registered copyright, and owns all rights to the Copyrighted Image.

78.     Defendants without license or authority from plaintiff, reproduced, publicly displayed, and/or distributed plaintiff's Copyrighted Image.

79.     Defendants copied, distributed, and publicly displayed the Copyrighted Image solely for the purpose of commercial gain.

80.     Defendants refused to cease and desist after demand from plaintiff's counsel.

81.     Should plaintiff elect an award of statutory damages, only an award at the top of the statutory scale will serve as a deterrent to defendants.

82.     At all times relevant to this Complaint, defendants' use of the Copyrighted Image was not for criticism, comment, news reporting, teaching, scholarship, or research.

83.     At all times relevant to this Complaint, defendants' use was not transformative.

84.     Defendants elected to reproduce, distribute, and/or publicly display plaintiff's Copyrighted Image, using the entirety of the Copyrighted Track, without a license.

85.     As a direct and proximate result of defendants' infringement of plaintiff's exclusive rights to the Copyrighted Image as set forth in Section 106 of the Act, plaintiff has incurred damages, and requests an award of plaintiff's actual damages, and defendants' profits in excess of plaintiff's actual damages, plus the reasonable attorneys' fees and costs incurred in this action.  Plaintiff may also elect to recover one statutory damage award.  Defendants' acts of infringement were intentional or with reckless disregard to plaintiff's rights, and plaintiff is entitled to enhanced damages of up to $150,000 pursuant to 17 U.S.C. § 504(c)(2).

## SECOND CLAIM FOR RELIEF
## CONTRIBUTORY INFRINGEMENT

86.     Plaintiff incorporates the allegations contained in the preceding paragraphs as if set forth at length here.

87.     Defendants materially supported the infringement of the Copyrighted Track by numerous third-party infringers like Art Boss and MAFF by distributing the unlicensed reproduction of the Copyrighted Track which was synchronized to the Infringing Advertisement.

88.     Defendants provided the material aid to the third-party infringers on the express condition that the third-party infringers include an advertisement for defendants' brand, in addition to the brand advertising in the Infringing Advertisement.

89.     Defendants' marketing scheme relies on the third-party infringements to increase their brand awareness and good-will.  The third=party infringers also included hyperlinks to defendants' website so viewers could purchase defendants' products.

90.     Defendants, and each of them, are liable for contributory infringement for each third-party infringement, directly and indirectly.

91.     As a direct and proximate result of defendants' contributory infringement, plaintiff has incurred damages, and requests an award of plaintiff's actual damages including all lost license fees, and defendants' profits in excess of plaintiff's actual damages.  Plaintiff may also elect to recover a statutory damage award of up to $150,000, plus the reasonable attorneys' fees and costs incurred in this action.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for judgment against defendants, and awarding plaintiff as follows:

1.     restitution of defendants' unlawful proceeds in excess of plaintiff's compensatory damages;

2.     compensatory damages in an amount to be ascertained at trial;

3.     statutory damages to plaintiff according to proof, including but not limited to all penalties authorized by the Copyright Act (17 U.S.C. §§ 504(c)(1), 504(c)(2));

4.     an award of statutory damages for each violation by defendants of the DMCA, 17 U.S.C. § 1202;

5.     reasonable attorneys' fees and costs (17 U.S.C. § 505);

6.     pre- and post-judgment interest to the extent allowable; and,

7.      such other and further relief that the Court may deem just and proper.

Plaintiff hereby demands a trial by jury of all issues so triable.

Dated: August 26, 2021                    **GARBARINI FITZGERALD P.C.**
       New York, New York

By: _____

        Richard M. Garbarini (RG 5496)